Van Voorhis, J.
(dissenting). The complaint states a cause of action, in our judgment, in respect of the allegations that excessive funds of the New York State Teachers Retirement System (hereafter called System) were deposited in the National Commercial Bank and Trust Company (hereafter called National) without interest. We agree with the majority that the other items of the complaint fail to state a cause of action, and, also, that deposit of the funds of System in National does not of itself constitute a loan to National in violation of subdivision 3 of section 508 of the Education Law. This section does, however, provide that no member or employee of the board of System shall have any interest, direct or indirect, in the gains or profits of any investment made by the board and that no corporation of which he is an officer, stockholder or member shall “ in any manner use ” the funds or deposits of System “ except to make such current and necessary payments as are authorized by the board”. This statute, like other statutes, should be interpreted in the light of its purposes and of the framework of the law of which it is a part. Where a fiduciary relationship is involved, as here, that signifies that “use” of the funds of System, under the circumstances here disclosed, shall be made in accordance with general equitable principles regarding interlocking directorates. Defendant McCabe is chairman of the finance committee of the board of System and is also National’s president and chief executive officer. The complaint alleges the amounts of cash balances maintained by System on deposit with National in non-interest-bearing accounts at the close of the fiscal years 1957 through 1961, ranging from $4,252,046 to $8,295,623. For the fiscal year ended June 30, 1962, it is alleged in the complaint that the average end of the month cash balances of System on deposit with National in non-interest-bearing accounts was $11,460,000 and that, during the fiscal year ending June 30, 1963, the cash balances in such accounts ranged from $4,036,000 to $17,980,000. The complaint alleges that these cash balances are excessive and unnecessary for the proper conduct of the business of System and that other retirement systems in the State, having assets even larger than those of System, deposit funds in more than one depository (unlike System) and maintain substantially lower non-interest-bearing *535 cash balances. A list compiled by the Superintendent of Insurance reflects the comparison with three other retirement systems showing substantially larger deposits of System in proportion to total assets than in the case of the other retirement systems. Likewise, the absolute amounts of the deposits are alleged to be larger. Thus the New York City Teachers Retirement System, having larger gross assets than those of System, is alleged to have maintained an average monthly amount of $2,459,000 on deposit with four banks in non-interest-bearing accounts for the fiscal year 1963; and the New York State Employees Retirement System, having larger gross assets than those of System, is alleged to have maintained an average monthly balance of $2,220,000 on deposit with three banks in non-interest-bearing accounts for the fiscal year of 1962.
The majority opinion appears to consider that, regardless of whether these deposits of System in non-interest-bearing accounts in National were excessive, no remedy is furnished by subdivision 3 of section 508 of the Education Law. We think that this conclusion is erroneous. The proper “use” of the funds of System, required by subdivision 3 of section 508, should be determined according to the pattern of the law applicable to interlocking directorates of private corporations. Not every transaction is prohibited between such corporations, but a court of equity will ‘ ‘ require the most careful scrutiny of transactions between the corporations represented by common directors, to the end that in the absence of arm’s length bargaining the scales may not, even through mistake or inadvertance, be unfairly tipped to one side or the other. ” (Chelrob, Inc. v. Barrett, 293 N. Y. 442, 461, per Lehman, Ch. J.) In Chelrob, the court continued by quoting from Geddes v. Anaconda Min. Co. (254 U. S. 590, 599) as follows: “ The relation of directors to corporations is of such a fiduciary nature that transactions between boards having common members are regarded as jealously by the law as are personal dealings between a director and his corporation, and where the fairness of such transactions is challenged the burden is upon those who would maintain them to show their entire fairness and where a sale is involved the full adequacy of the consideration. Especially is this true where a common director is dominating in influence or in character. This court has been con *536 sistently emphatic in the application of this role, which, it has declared, is founded in soundest morality, and we now add in the soundest business policy. ”
The circumstance that there was not a majority of interlocking directors does not alter this equitable rule of fairness where, as here, the common director or trustee was in position to be influential in both organizations (Globe Woolen Co. v. Utica Gas & Elec. Co., 224 N. Y. 483).
Unquestionably the transaction of current business by System requires considerable cash to be on deposit in checking accounts in order to make the payments required to retired members. Since the complaint was dismissed as insufficient in law, the parties have not had opportunity to present evidence to establish, within reasonable limits, how large such deposits of System should be. Equitable principles governing the conduct of fiduciaries dictate, however, that unlimited scope will not be allowed in transactions of this nature where common directors or officers are involved. These principles should be deemed to have been in the contemplation of the Legislature in enacting subdivision 3 of section 508 of the Education Law. In our judgment they would control even in the absence of that statute. Certainly System, of whose finance committee defendant McCabe is chairman, cannot legally deposit funds, however large, with National, of which Mr. McCabe is president and chief executive officer, without interest and exempt from court supervision. In the absence of evidence introduced at a trial, we are not called upon at this point to decide the limits of what would be fair amounts of such deposits in the normal course of System’s business. The outcome of a trial might show that such limits have not been exceeded. Nevertheless, in our view, the complaint should not have been dismissed as insufficient in law, apparently on the theory that the courts have no power nor responsibility in the premises.
Nonpayment of interest on these deposits is sought to be justified upon the ground that National rendered services to System as its customer principally in the processing of large numbers of checks in payment of retirement benefits. Since the complaint was dismissed on its face, however, and no answer was interposed nor any issue presented with respect to how much such services were worth, nor whether they equalled or *537 exceeded in value whatever interest System may have been entitled to be paid on these deposits, this contention is irrelevant at the present stage of the proceedings and cannot sustain the dismissal of the complaint.
The order appealed from should be reversed and the motion to dismiss the complaint should be denied, with costs to appellant in all courts.
Judges Burke, Scileppi, Bergan and Keating concur with Chief Judge Fuld ; Judge Van Voorhis dissents and votes to reverse in an opinion in which Judge Breitel concurs.
Order affirmed.